UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JOSEPH VIDAL,

                          Plaintiff,             **OPINION AND ORDER**

        -against-                          16 Civ. 5006 (JCM)

CORRECTION OFFICER C. LAMPON,
CORRECTION OFFICER R. COCUZZA,
CORRECTION OFFICER WESLEY,
CORRECTION OFFICER K. CHASE,
CORRECTION OFFICER MOREL,
CORRECTION OFFICER BARUFFO,
and SERGEANT DRAGOON,[1]

                        Defendants.
----------------------------------------------------------------X

On July 18, 2018, the jury in this case rendered a unanimous verdict that resulted in a judgment in favor of Defendants Carlos Lampon, Robert Cocuzza, Mark Wesley, Jose Morel and Michael Dragoon (collectively "Defendants").[2] (Docket No. 77). Before the Court are Plaintiff's motions, dated July 27, 2018, to set aside the verdict and for a new trial pursuant to Federal Rule of Civil Procedure 59(a) and for reconsideration pursuant to Local Rule of Civil Procedure 6.3. (Docket Nos. 81, 82). Defendants opposed the motions on August 23, 2018, (Docket No. 87), and Plaintiff submitted his reply on October 18, 2018, (Docket No. 97).[3] For the reasons set forth below, the Court denies Plaintiff's motions.

---

[1] Plaintiff voluntarily dismissed his claims against Defendants Baruffo and Chase. (Docket No. 75).

[2] This action is before this Court for all purposes on the consent of the parties, pursuant to 28 U.S.C. § 636(c). (Docket No. 43).

[3] The parties' briefs are hereinafter cited as "Pl. Br.," "Defs. Br." and "Pl. Reply" (Docket Nos. 82, 87, 97). All page number citations refer to the page number assigned upon electronic filing unless otherwise noted. Plaintiff's declaration submitted in support of his motions is referred to as "Pl. Dec." (Docket No. 81).

1

## I. BACKGROUND

Plaintiff Joseph Vidal brought this action under 42 U.S.C. § 1983, alleging excessive use of force and failure to intervene against several correctional officers. (Docket No. 1). A jury trial commenced on July 16, 2018. On July 18, 2018, the jury returned a verdict for Defendants, finding that Defendants were not liable for using excessive force.

The parties agree that on March 6, 2015, Plaintiff was moving into housing block A ("A Block") while incarcerated at Green Haven Correctional Facility. (7/16/18 Tr. at 15-16; 7/17/18 Tr. at 3-5). The parties also agree that Plaintiff was carrying more property than permitted by applicable facility rules during his move and that Correction Officer ("CO") Lampon instructed Plaintiff to get rid of his extra bags. (7/16/18 Tr. at 16, 22; 7/17/18 Tr. at 5).

The parties' versions of events of what happened after CO Lampon told Plaintiff he needed to discard his extra bags differ. Plaintiff testified that while he was complying with CO Lampon's instructions, CO Lampon punched him and knocked his glasses off. (7/16/18 Tr. at 24). CO Lampon instructed Plaintiff to get on the floor. (*Id.* at 25). As Plaintiff got to his knees, Plaintiff testified that CO Lampon and CO Wesley grabbed him and held him to the floor on his stomach. (*Id.*). Plaintiff testified that CO Lampon and CO Wesley dragged him and beat him as CO Cocuzza watched and failed to intervene. (*Id.* at 24-25). After Plaintiff was placed in handcuffs, the officers called in a response team, which included CO Morel, CO Baruffo and Sergeant Dragoon. (*Id.* at 26).

According to Plaintiff, CO Morel and CO Baruffo took Plaintiff outside of A Block into a corridor and Sergeant Dragoon told them to hold Plaintiff in place. (7/16/18 Tr. at 27). At this point in time, Plaintiff testified that the only officers with Plaintiff outside of A Block were CO Morel, CO Baruffo and Sergeant Dragoon, and that the rest of the officers had left. (*Id.*).

2

Plaintiff further testified that Sergeant Dragoon told CO Morel and CO Baruffo, "You guys are pretty young. Let me see what you can do." (*Id.*). Plaintiff claims that CO Morel and CO Baruffo then began punching and kneeing him in the chest. (*Id.* at 27-28). Plaintiff was taken to the solitary housing unit where he was examined by a nurse. Plaintiff suffered chest pain, a fractured rib and shoulder complications. (*Id.* at 32-33).

John Morgano, an inmate who partially witnessed the incident, testified. Mr. Morgano testified that, while he did not see Defendants hit Plaintiff, he heard screaming and heard Plaintiff saying repeatedly, "Why are you doing this?" and "stop." (7/16/18 Tr. at 53-55). Mr. Morgano claimed it was "apparent they [the officers] were kicking him" because "[t]hat's what they do all the time." (*Id.* at 55). Mr. Morgano heard a response team arrive and heard more screaming, but he could not see from his cell. (*Id.*). Mr. Morgano testified that he never saw Plaintiff strike an officer or attempt to strike an officer. (*Id.* at 56). Anthony Dunlap, another inmate, also testified. Mr. Dunlap heard CO Lampon and CO Wesley tell Plaintiff that he could not bring his extra bags into A Block. (*Id.* at 67-68). Mr. Dunlap said that he observed Plaintiff comply with the officers' directions. (*Id.*). Mr. Dunlap further testified that as Plaintiff was bringing his bags upstairs, he saw Plaintiff start running and saying, "Why are you doing this to me?" (*Id.* at 68-69). Mr. Dunlap testified that he saw CO Lampon and CO Wesley chasing Plaintiff. (*Id.* at 76). Plaintiff continued to run and looked "frantic" and "scared." (*Id.* at 69). Mr. Dunlap testified that he then saw CO Lampon and CO Wesley punching and kicking Plaintiff while Plaintiff tried to protect himself. (*Id.* at 70-71). Mr. Dunlap claimed he never saw Plaintiff resisting the officers. (*Id.* at 71-72). Mr. Dunlap also observed the response team come to A Block, but he did not see what happened after the response team removed Plaintiff from A Block. (*Id.* at 73).

By contrast, Defendants' theory of the case was that Plaintiff began punching CO Lampon after CO Lampon told him he had too much property, and in response, CO Lampon and CO Wesley attempted to gain control of Plaintiff while he resisted. (7/16/18 Tr. at 110, 112; 7/17/18 Tr. at 6-7). According to Defendants, the response team consisting of Sergeant Dragoon, CO Morel and CO Baruffo transported Plaintiff to the special housing unit without incident and without any use of force. (7/17/18 Tr. at 52, 74-75, 85). Defendants steadfastly denied that they initiated physical force with Plaintiff. (7/16/18 Tr. at 110; 7/17/18 Tr. at 11, 52).

Defendants also called medical personnel to the stand to testify about the extent of Plaintiff's and Defendants' injuries. Nurse Burns, the nurse who treated Plaintiff, testified that Plaintiff complained of chest pain and had an abrasion on his right temple. (7/17/18 Tr. at 100). She indicated that his lungs were clear and he was not suffering from respiratory distress. (*Id.*). Defendants introduced the Facility Health Service Report prepared documenting Plaintiff's injuries as well as photographs of Plaintiff's injuries. (*Id.* at 100, 102-104). Dr. Bentivegna, who also treated Plaintiff after the incident, testified that an x-ray of Plaintiff's rib on March 12, 2015 showed that Plaintiff's rib was fractured. (*Id.* at 135).

Defendants also elicited testimony from Nurse Giordano, the nurse who examined CO Lampon and CO Wesley and introduced into evidence the injury reports for both officers. Nurse Giordano observed that CO Lampon's "right side of face [was] reddened and swollen" and that he complained of pain in his right jaw. (7/17/18 Tr. at 123). Nurse Giordano also observed that CO Wesley had redness on the side of his face and complained of pain in his jaw, shoulder and neck. (*Id.* at 127).

## II. LEGAL STANDARDS

Plaintiff moves to set aside the verdict and for a new trial pursuant to Federal Rule of Civil Procedure 59(a), and for reconsideration pursuant to Local Rule of Civil Procedure 6.3.

### A. Motion for a New Trial

"A motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Atkins v. N.Y. City*, 143 F.3d 100, 102 (2d Cir. 1998) (citation and quotations omitted). When considering a motion for a new trial, the Court "need not view the evidence in the light most favorable to the verdict winner." *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 418 (2d Cir. 2012). "A new trial may be granted, therefore, when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998). However, the Court "should rarely disturb a jury's evaluation of a witness's credibility," (*id.* at 134), and it should grant a Rule 59 motion only when the verdict is "egregious" based on the evidence presented at trial. *Id.*

Rule 59(a) motions are committed to the "sound discretion" of the court. *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 143 (2d Cir. 1998). "It is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation and internal quotation marks omitted).

### B. Motion for Reconsideration

"The standard applied in reviewing a motion for reconsideration is almost identical to that for a motion for a new trial . . ." *United States v. Pokerstars*, No. 11-CV-2564 (KMW), 2017

WL 1536010, at *3 (S.D.N.Y. Apr. 28, 2017).[4] As with a motion for a new trial, "a movant under Local Civil Rule 6.3 must show clear error." *Id.* at *4. Specifically, "the moving party must demonstrate controlling law or factual matters put before the court on the underlying motion that the movant believes the court overlooked and that might reasonably be expected to alter the court's decision." *Montanile v. Nat'l Broadcasting Co.*, 216 F. Supp. 2d 341, 342 (S.D.N.Y. 2002). A motion for reconsideration should not be used to relitigate an issue already decided. *See Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390, 391-92 (S.D.N.Y. 2000). Additionally, a motion for reconsideration may not be used to "advance new facts, issues or arguments not previously presented to the Court." *Pokerstars*, 2017 WL 1536010, at *4.

## III. DISCUSSION

Plaintiff makes two arguments for why he is entitled to a new trial and/or reconsideration. First, Plaintiff argues that the Court erred in denying Plaintiff's application to alter the verdict form to allow the jury to find Defendants liable for both excessive force and for failing to intervene. (Pl. Dec. ¶¶ 1-4; Pl. Reply at 3-6). Second, Plaintiff contends that the jury's conclusion that Defendant Morel did not use excessive force was against the weight of the evidence. (Pl. Br. at 9-13).

### A. The Verdict Form

It is well established that "[w]hen a law enforcement officer 'is a direct participant in the allegedly excessive use of force, the failure to intervene theory of liability is inapplicable.'" *Buchy v. City of White Plains*, No. 14-CV-1806 (VB), 2015 WL 8207492, at *3 (S.D.N.Y. Dec.

---

[4] In accordance with *Lebron v. Sanders*, 557 F.3d 76, 79 (2d Cir. 2009) and Local Civil Rule 7.2 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, a copy of this case and any others cited herein, only available by electronic database, accompany this Opinion and Order and shall be simultaneously delivered to the *pro se* Plaintiff.

6

7, 2015) (citation omitted). Thus, a defendant "may not be held liable both for using excessive force and for failing to prevent the use of excessive force." *Id.* It is also well settled that "there can be no failure to intervene claim without a primary constitutional violation." *Sanabria v. Detective Shawn Tezlof*, No. 11-CV-6578 (NSR), 2016 WL 4371750, at *5 (S.D.N.Y. Aug. 12, 2016) (citation and internal quotation marks omitted). Accordingly, if a jury finds that there is no excessive force, a failure to intervene claim cannot survive.

Consistent with these principles, Question 1 on the verdict form asked the jury to determine if any Defendant used excessive force. If the jury answered "No" as to every Defendant, jury deliberations concluded and the verdict form was complete. If the jury found that at least one of the Defendants engaged in excessive force, Question 2 then asked the jury to determine if any Defendant who did not engage in excessive force was nonetheless liable for failing to intervene.

Prior to closing statements, Plaintiff moved to alter the verdict form to allow the jury to make a finding that a Defendant liable for excessive force could also be liable for failing to intervene. (7/18/18 Tr. at 149-160). Plaintiff argued that because there were two different assaults, the jury could find a Defendant liable for use of excessive force in the first assault and also liable for failure to intervene in the second assault without resulting in an inconsistent verdict. (*Id.*). When the Court asked Plaintiff's counsel how she would change the verdict form, the only change Plaintiff's counsel proposed was removing the sentence in Question 2 that limited failure-to-intervene liability to Defendants that were not already liable for excessive force. (*Id.* at 160). The Court denied Plaintiff's application on the grounds that Plaintiff's proposed change could lead to a jury finding inconsistent with the aforementioned legal

principles, Plaintiff would not be harmed by the verdict form as written, and the testimony from trial did not support Plaintiff's proposed change. (*Id.* at 161-164).

In his post-trial motion, Plaintiff argues that the verdict form was erroneous because it did not distinguish between two separate assaults. (Pl. Dec. ¶¶ 1-3; Pl. Reply at 4-6). Plaintiff claims the first incident occurred when CO Lampon and CO Wesley used excessive force by using a body hold and striking Plaintiff while CO Cocuzza watched and failed to intervene. (Pl. Reply at 4). Plaintiff claims the second incident occurred when CO Morel and CO Baruffo, at the direction of Sergeant Dragoon, assaulted Plaintiff while Sergeant Dragoon, CO Lampon, CO Wesley and CO Cocuzza failed to intervene. (*Id.*). In response, Defendants maintain that Plaintiff's argument concerning the wording of the failure-to-intervene claim on the verdict form is moot because the jury determined that none of Defendants used excessive force. (Defs. Br. at 4-5). Defendants further argue that the Court's decision was not clear error. (*Id.* at 5-6).

The Court agrees with Defendants that Plaintiff's challenge to the wording of the failure-to-intervene claim is moot because the jury found that the Defendants did not engage in excessive force. Plaintiff claims that an altered verdict sheet "would have allowed the jurors to consider whether excessive force was used by CO Morel fracturing Plaintiff's rib and whether CO Lampon, CO Wesley, and CO Cocuzza failed to intervene during the second assault that took place outside and to the side of A-Block's entrance door." (Pl. Reply at 5). Plaintiff's concerns are misplaced as the verdict form, as written, allowed the jury to make such a determination. The verdict form explicitly asked the jury to determine if CO Morel used excessive force, and the jury found that he did not. Without a finding of liability on the underlying claim of excessive force, a failure-to-intervene claim fails as a matter of law.

8

Moreover, Plaintiff has not demonstrated that the Court's denial of Plaintiff's application to amend the verdict form was clear error. The verdict form as written would not and did not result in any prejudice to Plaintiff. The verdict form asked the jury with respect to each individual Defendant if that Defendant engaged in excessive force. It left open the possibility that a Defendant could be found not liable for excessive force but still be found liable for failing to intervene. On the contrary, the change proposed by Plaintiff's counsel at trial would have created the potential for a verdict contrary to well-established law that prohibits liability for both excessive force and failing to intervene. (7/18/18 Tr. at 160).

While Plaintiff maintains that CO Lampon and CO Wesley can be liable for both excessive force and failure to intervene because they were present for a second assault, the facts adduced at trial do not support Plaintiff's argument. On the witness stand, Plaintiff testified that CO Lampon, CO Wesley and CO Cocuzza had already left before Plaintiff claims he was assaulted by CO Baruffo and CO Morel:

> Q. So they – I believe you said Officer Morel, Baruffo, and then Sergeant Dragoon took you outside of A Block?
>
> A. Absolutely.
>
> Q. And what is that? What's outside A Block? Is it a hallway?
>
> A. It's a corridor.
>
> Q. Are there any other inmates there?
>
> A. When there's a response, there's nobody in the hallway but officers.
>
> Q. And there were no other officers there except those three [Sergeant Dragoon, CO Morel and CO Baruffo]?
>
> A. They left.

9

(Tr. at 27). Based on Plaintiff's own testimony, CO Lampon, CO Wesley and CO Cocuzzo were not present during CO Baruffo's and CO Morel's alleged assault. Plaintiff claims that his counsel cut him off before he had the chance to testify that CO Lampon, CO Wesley and CO Cocuzza were still present, and if his counsel had not interjected he would have testified that they remained standing near the entrance door. (Pl. Reply at 5). Plaintiff was represented at trial and Plaintiff and his counsel had the opportunity to develop his testimony. At trial, Plaintiff testified that the other officers had left and responded affirmatively when asked if "there were no other officers there except those three [Sergeant Dragoon, CO Morel and CO Baruffo]?" (7/16/18 Tr. at 27). The Court will not consider Plaintiff's new factual contention, which was not elicited at trial. *See Pokerstars*, 2017 WL 1536010, at *4 (a motion for reconsideration should not be used to "advance new facts, issues or arguments not previously presented to the Court.").

Accordingly, based on the above reasons, including the absence of prejudice to Plaintiff, the jury's finding that there was no excessive force, and the facts adduced at trial – the Court denies the branch of Plaintiff's motion seeking reconsideration and a new trial based on the verdict form.

## B. The Jury's Finding That CO Morel Did Not Use Excessive Force

Plaintiff also argues that the jury's finding that CO Morel did not use excessive force was against the weight of the evidence, warranting a new trial. (Pl. Br. at 11). Specifically, Plaintiff argues that no reasonable juror could conclude that CO Morel did not use excessive force based on the medical evidence, which showed that Plaintiff suffered a fractured rib. (*Id.*). Conversely, Defendants argue that the medical evidence was consistent with the verdict. Defendants maintain that the jury could reasonably credit Defendants' testimony and find that Plaintiff

fractured his rib while he was resisting and struggling with CO Lampon and CO Wesley. (Defs. Br. at 7-8).

Plaintiff argues that CO Morel must have used excessive force on Plaintiff because there is no other reasonable explanation for Plaintiff's fractured rib. (Pl. Br. at 10-11). The Court disagrees. Dr. Ventigna testified that Plaintiff likely fractured his rib as the result of a "use of force." (7/17/18 Tr. at 136). It was the role of the jury to determine if any use of force was excessive.

In this case, the parties told very different versions of events at trial. Plaintiff testified that CO Lampon punched him first and that CO Lampon and CO Wesley beat him while he was on the ground. (7/16/18 Tr. at 24). CO Lampon contradicted Plaintiff's testimony and stated that Plaintiff punched him and claimed that he and CO Wesley had to use body holds and push Plaintiff to the ground in order to subdue Plaintiff and that at one point they all fell to the ground during the struggle. (7/17/18 Tr. at 6-7). With respect to the response team, Plaintiff testified that CO Morel and CO Baruffo beat Plaintiff at Sergeant Dragoon's direction and punched and kneed him in the chest. (7/16/18 Tr. at 27-28). In contrast, Sergeant Dragoon, CO Morel and CO Baruffo denied that they used any force on Plaintiff when they brought him in handcuffs to the solitary housing unit. (7/17/18 Tr. at 52, 74-75, 85). The jurors were free to assess the credibility of the parties' testimony at trial in light of all the evidence and decide which version of events they found more credible. It was reasonable for the jury to determine that Plaintiff incurred his injuries, including his fractured rib, while Plaintiff resisted CO Lampon's and CO Wesley's attempts to subdue him. While the Court is not required to view the evidence in the light most favorable to the nonmoving party on a Rule 59 motion, a Court should not disturb a jury's

11

credibility determinations except in rare circumstances. *See DLC Mgmt.*, 163 F.3d at 134. The Court will not revisit and override the jury's inferences and credibility determinations now.

The jury's finding that CO Morel did not use excessive force was not against the weight of the evidence. The Court, therefore, denies Plaintiff's motion for a new trial on this basis.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motions to set aside the verdict and for a new trial pursuant to Federal Rule of Civil Procedure 59(a) and for reconsideration pursuant to Local Rule of Civil Procedure 6.3 are denied. The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. The Clerk is respectfully requested to terminate the pending motions, (Docket Nos. 81, 82), and mail a copy of this Order to the *pro se* Plaintiff.

Dated:   January 7, 2019
           White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge